O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE ZEMAN, on behalf of the UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>   v.<br><br>USC UNIVERSITY HOSPITAL,<br><br>              Defendant. | Case No. CV 11-05755 DDP (MRWx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Dkt No. 39] |

    Presently before the court is Defendant USC University Hospital ("the Hospital")'s Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"). Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following order.

**I.   Background**

    Relator Julia Zeman is covered by Medicare. (SAC ¶ 11.) As explained in this court's earlier orders, the Medicare program provides certain health care benefits to eligible elderly and disabled people. See Maximum Comfort Inc. v. Sec'y of Health and Human Servs., 512 F.3d 1081, 1083 (9th Cir. 2007); Vencor Inc. v.

Nat'l States Ins. Co., 303 F.3d 1024, 1026 (9th Cir. 2002); Alhambra Hosp. v. Thompson, 259 F.3d 1071, 1072 (9th Cir. 2001).

Zeman underwent eight outpatient orthopedic surgeries between September 6, 2007 and November 1, 2011. (SAC ¶ 16.) The surgeries all took place at an Ambulatory Surgical Center ("ASC") owned and operated by the Hospital, but adjacent to the main hospital facility.[1] (SAC ¶¶ 3, 13.) Zeman occasionally returned for follow-up visits with her surgeons within ninety days of her various procedures. (SAC ¶ 18.)

In October 2009, Defendant began to operate the orthopedic practice at the ASC as part of the hospital. (SAC ¶ 3. After that time, the Hospital began to charged Plaintiff additional fees of about $95.63 for follow-up "office visits," "clinic," and "clinic services". (SAC ¶¶ 15, 20.) The Hospital did not bill for every office visit, however. (SAC ¶ 18.)

Zeman alleges that these billings were improper because Medicare regulations prohibit charges for follow-up care within ninety days of a major surgery. (SAC ¶¶ 13-14.) On July 13, 2011, Zeman filed a qui tam complaint against the Hospital for violations of the False Claims Act, 31 U.S.C. §§ 3729-3733. The complaint alleged that the Hospital knowingly presented false or fraudulent claims to Medicare and used false records to get the fraudulent claims approved. The government did not intervene.[2] This court

---

[1] Though the SAC alleges that the Hospital owned and operated the ASC at all relevant times, the SAC also alleges that Defendant purchased the ASC in April 2009, between Plaintiff's second and third surgeries. (SAC ¶¶ 3, 16.)

[2] Under the False Claims Act, 31 U.S.C. §§ 3729-3733, a
(continued...)

2

dismissed Plaintiff's original complaint and First Amended Complaint, with leave to amend. Plaintiff then filed the SAC, which the Hospital now moves to dismiss.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly

---

[2](...continued)
private party may bring suit, under seal, on behalf of the government as a qui tam relator. If the government elects not to intervene, the case proceeds as a normal civil action. See Aflatooni ex rel United States v. Kitsap Physicians Serv., 314 F. 3d 955, 998 n.2 (9th Cir. 2002).

3

give rise to an entitlement of relief." Id. at 679.  Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

The issue presented here once again is whether the Hospital violated Medicare's "global surgery rule."  For major surgical procedures, Medicare pays surgeons a single amount for all services typically rendered by the surgeon in the time period spanning from one day prior to the surgery to ninety days following the procedure.  77 Fed. Reg. 68892, 68911 (Nov. 16, 2012). Postoperative visits related to recovery of the surgery fall within this "global surgical package."  Medicare Claims Processing Manual, Chapter 12, § 40.1A.

Other hospital-provided outpatient services, however, fall under a different framework.  75 Fed. Reg. 71800, 71806 (Nov. 24, 2010) ("The O[utpatient] P[rospective] P[ayment] S[ystem] includes payment for most hospital outpatient services[.]"  Medicare's physician fee schedules are separate from, and have no bearing upon, the OPPS.  Id. at 71870.  OPPS does not include any "provision for hospital outpatient services analogous to the global period affecting payments for professional services made under the Medicare physician fee schedule."  65 Fed. Reg. 18434, 18448 (Apr. 7, 2000).

The Hospital argues that the global surgery rule applies only to surgeons, not to "facility fees" charged under OPPS for outpatient clinic services such as those Zeman received from the Hospital. (Motion at 10.) Plainitiff's response is unclear. On the one hand, Plaintiff contends that the "facilities fees" charges here are merely "a guise to improperly collect for professional services rendered by its physicians." SAC ¶ 18, Opp. at 4. At the same time, however, Plaintiff appears to argue that facilities fees themselves cannot be billed under OPPS.[3] (Opp. at 4 ("Defendant . . . fails to offer any applicable authority to charge an undefined 'facility charge'," 6 ("Defendant offers no legal authority for an exception to this exclusion for 'facility fees' for post-operative visits with the physician, in the physician's office."), 7 ("It is illogical to think that the hospital could collect a separate facility fee for every post-operative visit made by patients . . . .").

A.  OPPS Allows for Facilities Fees Charges

Plaintiff provides no authority for the proposition that OPPS excludes payments for facilities fees. To the contrary, the list of services that are explicitly excluded from OPPS does not include facilities fees. 42 C.F.R. § 419.22. Furthermore, as previously noted by the court, the Medicare Claims Processing Manual specifically explains "facility charges[s]" provided in connection with the clinic services of a physician:

---

[3] To the extent Plaintiff contends that any post-operative charges for clinic visits constitute charges for physicians' services by definition, she is mistaken, for the reasons discussed <u>infra</u>.

5

> "[W]hen a beneficiary receives clinic services from a hospital-based physician, the physician . . . would be reimbursed at the facility rate of the Medicare physician fee schedule – which does not include overhead expenses. The hospital historically has submitted a separate part B 'facility charge' for the associated overhead expenses . . . . The hospital's facility charge does not involve a separate service . . . ; rather, it represents solely the overhead expenses associated with furnishing the professional service itself."

MCPM Chapter 6, § 20.1.1.2. While this description is set forth in Chapter 6 of the MCPM, which concerns Skilled Nursing Facilities, that fact does not affect its reasoning or impair its explanatory power. Section 20.1.1.2 explains facilities charges for the purpose of illustrating why such charges are excluded from skilled nursing facility consolidated billing schedules. In doing so, Section 20.1.1.2 analogizes to the physician fee schedule which, as described above, is completely different from OPPS. Section 20.1.1.2 therefore refutes Plaintiff's unsupported assertion that OPPS does not allow for facilities fee charges.[4] See also Quick Facts About Payment for Outpatient Services for People with Medicare Part B, Centers for Medicare & Medicaid Services, January 2010, http://www.medicare.gov/Pubs/pdf/02118.pdf ("Part B services paid for under this system include . . . [t]he hospital charge for

---

[4] Section 20.1.2.2 further states that "hospitals bill for 'facility charges' under . . . codes in the range of 99201-99245. The court notes that the bills at issue here utilized code 99211, which falls within this "facility charge" range. (SAC ¶ 20). The MCPM itself acknowledges that these codes "were designed to reflect the activities of physicians and do not describe well the range and mix of services provided by hospitals during visits of clinic and emergency department patients." MCPM Chapter 4, § 160. Nevertheless, the MCPM directs providers to apply their own guidelines to existing code designations "[w]hile awaiting the development of a national set of facility-specific codes and guidelines." Id.

6

1  an emergency department <u>or hospital clinic visit</u> (doesn't include
2  an amount for the doctor's services)." (emphasis added)).
3      B.   Allegations Regarding Designation of Charges
4      Defendant further contends that because it is permitted to
5  charge facility fees under OPPS, Plaintiff has failed to plausibly
6  or adequately allege that the hospital billed improperly.  (Reply
7  at 3.)  The court disagrees.  As an initial matter, the SAC alleges
8  that Plaintiff was charged not for "facility fees," but rather for
9  services labeled "clinic," "clinic services," or "office visit."
10  SAC ¶ 20.  At this stage, it is unclear to the court what these
11  visits entailed and whether physicians' services falling under the
12  90-day rule bar were provided.  Furthermore, Plaintiff alleges that
13  these additional, supposed facility fee charges were only assessed
14  after some, but not all, of Plaintiff's post-operative visits, and
15  that such charges were levied more often than not for visits within
16  the 90-day period.  (SAC ¶ 18.)  These irregularities support
17  Plaintiffs allegations that the charges were not for uniform,
18  overhead expenses, but rather service fees in disguise.
19  Lastly, Plaintiff alleges that while the Hospital began charging
20  facility fees in October 2009, there was no contemporaneous
21  increase in the Hospital's overhead expenses that would justify the
22  imposition of a new charge.  (SAC ¶ 15.)  While it is unclear
23  whether the earlier fee included any facility charge, or whether
24  such charges were billed by some other entity, those too are
25  questions best resolved on summary judgment.  Plaintiff's
26  allegations comprise more than a naked assertion that the Hospital
27  intentionally mislabeled its bills.
28  ///

7

**IV. Conclusion**

    For the reasons stated above, Defendant's Motion to Dismiss the SAC is DENIED.

IT IS SO ORDERED.

Dated: September 16, 2013

                                  DEAN D. PREGERSON
                                  United States District Judge